```
               UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF MISSISSIPPI
                      NORTHERN DIVISION
```

AHMED BADR                                                                         PLAINTIFF

V.                                                     CIVIL ACTION NO. 3:20-CV-192-DPJ-FKB

JACKSON HMA, LLC AND
WILLIAM C. LINEAWEAVER                                                            DEFENDANTS

## ORDER

This employment dispute is before the Court on Defendant Dr. William C. Lineaweaver's motion to dismiss [56]. In response, Plaintiff Dr. Ahmed Badr conceded to dismissal of his race-discrimination claim (Count I) and offered new arguments and evidence supporting his tortious-interference-with-business-and/or-contractual-relations claim (Count II). Accordingly, the Court finds Defendant's motion [56] should be granted, but Plaintiff should be given an opportunity to seek leave to amend his Complaint.

I.     Facts and Procedural History

Dr. Badr filed this lawsuit challenging his removal from the Critical Care Director position at Merit Health and his elimination from the ICU and Anesthesia rotations. Initially, Dr. Badr advanced seven counts—race discrimination, tortious interference with business and/or contractual relations, breach of contract, self-dealing, breach of implied covenant of good faith and fair dealing, usurping corporate opportunity, and breach of the duty of loyalty—against four Defendants, two of whom have since been dismissed. 2d Am. Compl. [29] at 9–16. Dr. Lineaweaver now asks the Court to dismiss the two counts against him—race discrimination and tortious interference. *Id.* at 9–12. Because Dr. Badr conceded his race-discrimination claim, the Court focuses on the tortious-interference claim.

In general terms, Dr. Badr and Dr. Larry M. Nixon were business partners, forming Perioperative Services of Mississippi, LLC.  *Id.* at 3.  Perioperative entered "Call Coverage agreements" with Jackson HMA, LLC d/b/a Merit Health Central.  *Id.*  These contracts involved providing ICU Coverage, to include the Burn Intensive Care Unit, and Anesthesia Services.  *Id.* at 3–4.  Dr. Lineaweaver oversaw the Burn ICU, in addition to the Joseph M. Still Burn Center, Inc.  *Id.* at 4.

According to Dr. Badr, a scheduling conflict arose over the 2018 Thanksgiving Holiday.  *Id.* at 5.  Dr. Badr had a family engagement to attend and, with Dr. Lineaweaver's permission, found physicians to cover for him.  *Id.* (describing the holiday-coverage arrangement).  Nevertheless, during Dr. Badr's absence, Dr. Lineaweaver allegedly acted "surprised about the coverage of the [Burn ICU]," "was very ugly" to the physician Dr. Badr arranged to cover the ICU, and contacted Merit Health CEO Barry Moss to "raise[] hell about Plaintiff's absence."  *Id.* at 6.  The following month, Dr. Badr, at the urging of Dr. Nixon, communicated with Moss about the incident, and Moss responded, "I want you to step down from the ICU."  *Id.* at 7.

Dr. Badr continued to serve, presumably under the Anesthesia contract.  *Id.* (alleging "Plaintiff then asked about the anesthesia contract . . . and Barry Moss stated that he 'will ask and get back to him'").  Then, in February 2019, Moss contacted Dr. Badr and said, "Dr. Lineaweaver, his best customer, DOES NOT WANT YOU THERE!!"  *Id.* at 8.  Dr. Badr believes Moss and Dr. Lineaweaver "conspired with members of management of Merit Health to breach Merit Health's contract with Plaintiff's LLC and remove Plaintiff from the position of Critical Care Medical Director as well as remove him from the ICU rotation[.]"  *Id.*

Aggrieved, Dr. Badr filed this suit, alleging that Dr. Lineweaver tortiously interfered with two contracts between Perioperative and Jackson HMA. *Id.* at 10–11.[1] Specifically, Dr. Badr claims,

> Defendant Lineaweaver's action[s] were deceitful and malicious in that he deceived Plaintiff into thinking that he approved of Plaintiff's planned three[-]day absence, then created unnecessary drama and confusion while Plaintiff was away traveling to Pittsburgh to be with family for the Thanksgiving Holiday and ultimately demanding that Plaintiff be removed from his position with Jackson HMA.

*Id.* at 11.

Dr. Lineaweaver seeks dismissal, arguing Dr. Badr cannot establish a tortious-interference claim because he has not identified "any contract to which he is a party." Def.'s Mem. [57] at 11. Plaintiff filed a brief response, insisting he has "pursued a claim for tortious interference with a *business* and/or contractual relations," which does not require a contract. Pl.'s Resp. [59] at 1 (emphasis added). He also says he has employment agreements with Perioperative with which Dr. Lineaweaver tortiously interfered. *Id.* at 2; *see* Contracts [59-1]. Finally, Dr. Badr includes a request for an "opportunity to amend" the Complaint "[i]f the Court determines that reference to the contract is required." Pl.'s Resp. [59] at 2.

II.     Standard

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v.*

---

[1] The following contracts are attached to the Second Amended Complaint [29] and referenced in Count II:  (1) Medical Director Agreement [29-1] between Jackson HMA and Loukas Group, LLC, signed by Dr. Badr and listing him as the "Provider's Medical Director," (2) Draft Anesthesia Department Professional Services Agreement [29-2] between Jackson HMA and Perioperative (unsigned), (3) Call Coverage Agreement [29-3] between Jackson HMA and Perioperative (unsigned), listing Dr. Badr as one of two physicians who will provide service, and (4) Perioperative Operating Agreement [29-4] (unsigned).

*Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). To overcome a Rule 12(b)(6) motion, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (citing *Twombly*, 550 U.S. at 556).

Finally, "a plaintiff's failure to meet the specific pleading requirements should not automatically or inflexib[ly] result in dismissal of the complaint with prejudice to re-filing." *Hart v. Bayer Corp.*, 199 F.3d 239, 247–48 n.6 (5th Cir. 2000) (citation omitted). Thus, "[a]lthough a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Id.*

On the other hand, the Fifth Circuit has often observed that a "bare request [to amend] in an opposition to a motion to dismiss—without any indication of the particular grounds on which

4

the amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." *Parham v. Clinton*, 374 F. App'x 503, 505–06 (5th Cir. 2010) (citations omitted, punctuation edited) (affirming dismissal without leave to amend); *see Deese v. Immunex Corp.*, No: 3:11–CV–373–DPJ–FKB, 2012 WL 463722, at *2 (S.D. Miss. Feb. 13, 2012).

III.    Analysis

In his motion, Dr. Lineaweaver argues that because Dr. Badr only identified contracts between Perioperative (or Loukas Group) and Jackson HMA, he cannot bring a tortious interference claim "as any contractual right under these agreements solely belonged to" these entities, "not Plaintiff in his individual capacity." Def.'s Mem. [57] at 11; *see* Agreements [29-1, 29-2, 29-3, 29-4].

Dr. Badr does not directly address Dr. Lineaweaver's argument that he cannot maintain a tortious-interference-with-contract claim stemming from contracts between Perioperative and Jackson HMA. Instead, Dr. Badr first insists that he has alleged *interference with a business relationship*—a claim that does not require a contract. Pl.'s Resp. [59] at 2. Second, he attempts to salvage a tortious-interference-with-contract claim by pointing out that he and Dr. Nixon had a contract "to perform work together as Perioperative." *Id.* He attaches copies of two agreements wherein Perioperative, acting through its presiden,t Dr. Nixon, offers Dr. Badr employment. Contracts [59-1]. He reasons that Dr. Lineweaver intentionally interfered with his contract with Perioperative "by requesting that Plaintiff not be allowed to work in the ICU in the future." Pl.'s Resp. [59] at 2.

In his Complaint, Dr. Badr titled Count II as "Tortious Interference with Business and/or Contractual Relations," but the meat of this count refers to the contracts between Perioperative and Jackson HMA. 2d Am. Compl. [29] at 10. He attached four agreements between Jackson

5

HMA and Perioperative to the Complaint.  Agreements [29-1, 29-2, 29-3, 29-4].  And he recites the elements for a tortious-interference-with-contract claim, not a tortious-interference-with-business-relations claim.  2d Am. Compl. [29] at 10; *see Richard v. Supervalu, Inc.*, 974 So. 2d 944, 950 (Miss. Ct. App. 2008) (listing the elements of a tortious-interference-with-business-relations claim).  In short, the Second Amended Complaint does not put Dr. Lineaweaver on notice that Dr. Badr's theory of liability is interference with a business.  If Dr. Badr wishes to shift gears and assert a tortious-interference-with-business claim, he must first seek leave to amend his Complaint.

    Likewise, Dr. Badr's attempt to somehow salvage his tortious-interference-with-contract claim by alleging Dr. Lineweaver interfered with two previously unmentioned employment contracts is not proper.  The only contracts referenced in the Complaint are those between Perioperative and Jackson HMA.  Again, if Dr. Badr desires to pursue this new theory that Dr. Lineweaver interfered with these employment agreements, he must seek leave to amend his Complaint.[2]

    Lastly, while Dr. Badr did include a passing request for an opportunity to amend, this is insufficient and violates Uniform Local Civil Rules 7(b), 7(b)(2), and 7(b)(3)(C).  Pl.'s Resp. [59] at 2; *see* also *Parham*, 374 F. App'x at 505–06.  Nevertheless, dismissal in these circumstances is generally without prejudice to a plaintiff's right to seek leave to amend, so Plaintiff will receive that opportunity.

---

[2] The Court also notes that initially Dr. Badr advanced Count II against Dr. Lineaweaver and Dr. Nixon (who has since been dismissed).  In other words, if these employment offers were intended to be the source of the claim, Dr. Badr claims that Dr. Nixon somehow interfered with a contract he also signed.

He must, however, file a properly supported motion seeking leave to amend that includes the proposed Third Amended Complaint as required by Local Rule 7(b)(3)(C).[3]  Any motion should be filed within fourteen (14) days of this Order.  And failure to comply will be considered an abandonment of these claims and result in dismissal without further notice.  If Plaintiff files such a motion, Defendant will obviously receive an opportunity to oppose it.

IV.  Conclusion

For the reasons stated, the Court finds Defendant's motion to dismiss [56] should be granted; Plaintiff's race-discrimination claim and the tortious-interference claim, as presently articulated in Count II of the Second Amended Complaint, are dismissed.

If Dr. Badr opts not to file a motion to amend his Complaint within 14 days, Dr. Lineweaver will be dismissed from this action.

**SO ORDERED AND ADJUDGED** this the 9th day of June, 2021.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] If Plaintiff opts to file a motion for leave to file an amended complaint, he is encouraged to draft a proposed Third Amended Complaint that only contains those claims and names those Defendants still at issue.