IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**AHMED BADR, M.D.**                                                   **PLAINTIFF**

**v.**                            **CIVIL ACTION NO. 3:20-cv-192-DPJ-FKB**

**JACKSON HMA, LLC d/b/a MERIT HEALTH CENTRAL;**
**WILLIAM C. LINEAWEAVER, M.D.;**
                                                         **DEFENDANTS**

**THIRD AMENDED COMPLAINT**
**JURY TRIAL DEMANDED**

**COMES NOW** the Plaintiff, Ahmed Badr, MD, by and through counsel, Watson & Norris, PLLC, and files this action to recover damages for violations of his rights under 42 U.S.C. §§ 1981 for Race Discrimination. Plaintiff also files this action to recover damages for the actions of Defendant Jackson HMA, LLC d/b/a Merit Health Central for breach of contract. Plaintiff also files this action to recover damages for the actions of Defendant, William C. Lineaweaver, individually, which constitute the tort of tortious interference. In support of this cause, the Plaintiff would show unto the Court the following facts to-wit:

**THE PARTIES**

1. Plaintiff, Ahmed Badr, M.D., is an adult Egyptian male of South Mediterranean/Arabic descent who is a resident of the state of Pennsylvania and resides at: 194 Campmeeting Road Extension, Sewickley, PA 15143 which is located in Alleghany County, Pennsylvania where Plaintiff currently is registered to vote.

2. Defendant Jackson HMA, LLC d/b/a Merit Health Central (hereinafter

1

"Merit Health") is a Mississippi Corporation licensed to do business in the State of Mississippi and has appeared through counsel in this matter.

3. Defendant, William C. Lineaweaver, M.D. is a resident citizen of the state of Mississippi and may be served with process at his place of employment: Jackson HMA, LLC d/b/a Merit Health Central, 1850 Chadwick Drive, Suite 1427 Jackson, MS 39204.

## JURISDICTION AND VENUE

4. This Court has federal question, civil rights jurisdiction and diversity jurisdiction in that the amount in controversy exceeds $75,000 and the parties are citizens of different states. This Court also has personal and subject matter jurisdiction over the Defendants and venue is proper in this court.

5. Plaintiff timely files this cause of action within the appropriate statute of limitations for claims arising under 42 U.S.C. §§ 1981 and Mississippi law.

## STATEMENT OF FACTS

6. Plaintiff is a business partner with Larry M. Nixon, Jr., M.D., a black male of American (United States of America) origin, in their LLC, Perioperative Services of Mississippi, LLC.

7. Defendant, Perioperative Services of Mississippi, LLC, and Plaintiff are parties to written contractual Call Coverage agreements with Jackson HMA, LLC d/b/a Merit Health Central. [Docs. 27-1, 27-2 and 27-3].

8. Defendant, Larry M. Nixon, Jr., M.D., is the Managing Member and controlling member of Defendant, Perioperative Services of Mississippi, LLC. [Doc. 27-4].

9. Plaintiff also had a contract with his business partner to perform work together as Perioperative Services of Mississippi, LLC. [Doc. 59-1].

10. One contract at issue is for Adult and Pediatric ICU Coverage or Pediatric ICU coverage and another is for Anesthesia Services.

11. Until April 1, 2019, Plaintiff served as the Critical Care Medical Director for Merit Health Central when he was abruptly removed by its CEO, Barry Moss, white male of American (United States of America) origin, and replaced with Jeff Gibbs, white male of American (United States of America) origin.

12. Prior to Moss' abrupt removal of Plaintiff, an incident occurred which smacked of racial and national origin discrimination.

13. Specifically, Moss observed Plaintiff at work and approached him. Moss lifted Plaintiff's scrub pant leg, looked at Plaintiff's socks and shoes and made the statement "those are weird, is this the way **you guys** dress?"

14. Plaintiff asked Moss, "what do you mean by 'you guys'" and Moss shrugged his shoulders and did not respond. Present were two white male CRNA's of American origin, Bradley Cooper and Mark Fisher, who both observed the incident with Merit Health's CEO Barry Moss and stated to Plaintiff "that was racist."

15. Previously, Plaintiff formed Perioperative Services of MS, LLC with Defendant Dr. Larry Nixon and they were able to secure exclusive contracts for both Anesthesia services and Burn Intensive Care services (BICU) in 2 separate contracts.

16. Defendant Jackson HMA placed the BICU under the control of JMS and its agent and employee Dr. Lineaweaver, white male of American (United States of America) origin, served as the head of the group in Jackson, MS.

17. Prior to Plaintiff's forced exit, the Joseph M. Still Burn Centers, Inc. (hereinafter "JMS") group recruited two new burn surgeons, white males, who were also trained and boarded in Intensive Care.

18. Pursuant to the contracts in place with Jackson HMA, Dr. Nixon and Plaintiff were covering the BICU exclusively. However, Dr. Lineaweaver asked Plaintiff as the Director if he could include the two new white male burn surgeons in the coverage of the BICU, and Plaintiff gladly accepted.

19. Both surgeons applied for critical care privileges, and Plaintiff approved them since he served as the Director of Intensive Care in the hospital.

20. The BICU coverage entails daily both adult and pediatric coverage.

21. Merit Health as a hospital does not take care of pediatric patients except burn patients.

22. Any sick or complicated pediatric case ships immediately to JMS in Augusta GA.

23. Before the Thanksgiving Holiday of November of 2018, about 6 weeks in advance while Plaintiff was making the schedule, he realized that Dr. Nixon who was supposed to be on the schedule had to leave out of town for a family matter.

24. Plaintiff also had a family engagement during that time.

25. Plaintiff tried multiple locums to cover the week but with no luck.

26. Plaintiff discussed the conflict with Dr. Lineaweaver on multiple occasions.

27. Plaintiff asked Dr. Lineaweaver multiple times to have one or both the credentialed ICU burn surgeons to cover, and he asked Plaintiff to check with them if they agree.

28. Both of them agreed to cover.

29. So, Plaintiff went back to inform Dr. Lineaweaver, and he said he "really doesn't want the burn surgeons to cover" even though they both agreed to it.

30. Finally, Plaintiff found a solution for the adult patients which would be covered By Dr. Patel from Merit Health General ICU for only 3 days including the Holiday.

31. Plaintiff agreed to limit his time off to those 3 days only.

32. The pediatric portion, however, was not covered for those 3 days.

33. So, Plaintiff asked Dr. Lineaweaver if Merit Health could divert the pediatric cases to Augusta for those 3 days (Merit Health sends the sick ones there anyway) and Merit Health has done that often in the past, but Dr. Lineaweaver refused.

34. Then, Dr. Lineaweaver suggested if Plaintiff could have Dr. Pilar Kirkland (one of the anesthesia employees who is not critical care trained or certified) to cover and Plaintiff would be back up by phone.

35. Plaintiff agreed to that arrangement and asked Dr. Kirkland who accepted.

36. Plaintiff spoke with one of the critical care certified burn surgeon (Dr. Culnan) about the arrangement and he shook his head and told Plaintiff that Dr. Lineaweaver does not mean well by this arrangement and "he will "F**K" you so to speak."

37. Plaintiff then told Dr. Culnan, "Dr. Lineaweaver and I go way back, and he wouldn't do something like that especially it was his idea."

38. The very next morning at 6:00 a.m., Dr. Lineaweaver showed up in the BICU asked about Plaintiff's absence and demands "who is covering."

5

39. Dr. Lineaweaver also acted surprised about the coverage of the BICU and asked where Dr. Kirkland was (which according to the agreement she will only respond to requests when pediatric patients get admitted and no peds patient were on the floor or waiting to be admitted).

40. In addition, Dr. Patel was rounding in the ICU as requested, and Dr. Lineaweaver was very ugly to him (because of his race and national origin) and sarcastically asked him "why did he cover for Dr. Badr."

41. Dr. Lineaweaver then proceeded to call Barry Moss, the CEO of Merit Health, emergently and raised hell about Plaintiff's absence.

42. Plaintiff called Dr. Lineaweaver while in Atlanta on his way to Pittsburgh and asked him if he need to turn around and come back and he said things are "ok" now.

43. Plaintiff called Merit Health's CEO Barry Moss and left a message, but he never called Plaintiff back.

44. Plaintiff kept calling Dr. Kirkland and the BICU to check to make sure if there was any admission and there were none.

45. Plaintiff cut his previously approved three days of being off duty short and returned after only being off for two days.

46. Plaintiff then resumed his duties and did not hear anything further.

47. Towards the second half of December, Dr. Nixon approached Plaintiff and asked him if he spoke with Merit Health's CEO, Barry Moss.

48. Plaintiff responded that "nobody approached me for a meeting."

49. Plaintiff called Barry Moss, CEO of Merit Health.

6

50. Plaintiff met with him and he informed Plaintiff that "I want you to step down from the ICU."

51. When Plaintiff inquired why, he responded that Dr. Lineaweaver ("our best customer") does not want you to cover the ICU.

52. Plaintiff asked: "what exactly went wrong" and also stated "I didn't receive any warnings."

53. Plaintiff then asked about the anesthesia contract as it is a different contract, and Barry Moss stated that he "will ask and get back to him."

54. After few months in February of 2019, Barry Moss, CEO of Merit Health called Plaintiff and said again "Dr. Lineaweaver, his best customer, DOES NOT WANT YOU THERE!!!"

55. Defendants, collectively, at the direction of Barry Moss, CEO of Merit Health, and Dr. William C. Lineaweaver, M.D., conspired with members of management of Merit Health to breach Merit Health's contract with Plaintiff's LLC and remove Plaintiff from the position of Critical Care Medical Director as well as remove him from the ICU rotation and ultimately the Anesthesia rotation because of his race and national origin, effective freezing him out of his positions with Defendant Jackson HMA and his LLC.

56. As Managing Member of Perioperative Services of Mississippi, LLC, Dr. Nixon has improperly replaced Plaintiff with a new white American partner, Dr. Daniel Perlin.

57. Defendants' actions caused Plaintiff to suffer a significant loss of income and other benefits as well as significant damage to his professional reputation and standing within the community.

58.     Defendants' actions also caused Plaintiff to suffer future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

59.     As a result, Plaintiff has suffered and will continue to suffer a substantial loss of income and irreparable damage to his professional reputation.

## CAUSES OF ACTION

### COUNT I:  VIOLATION OF 42 U.S.C. §§ 1981– RACE DISCRIMINATION AGAINST DEFENDANTS JACKSON HMA, LLC;

60.     Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 59 above as if fully incorporated herein.

61.     The unlawful actions of the Defendant Jackson HMA, LLC complained of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff.

62.     Defendant Jackson HMA, LLC violated 42 U.S.C. §§ 1981 by allowing its employees to discriminate against Plaintiff because of his race and national origin.

63.     Plaintiff is a native of Egypt and is of Mediterranean/Arabic descent; thus, he is protected against discrimination on the basis of his race and national origin. Plaintiff was more than qualified for the position he held.

64.     Plaintiff suffered an adverse employment decision in that he was removed as the Critical Care Medical Director, removed from the ICU rotation and ultimately the Anesthesia rotation at Merit Health.

65.     Plaintiff was replaced by Jeff Gibbs, a white male whose national origin is that of the United States of America at the direction of Barry Moss, CEO of Merit Health, Dr. William C. Lineaweaver, M.D., and Larry M. Nixon, Jr., M.D., on the ICU contract

and a white male whose national origin is that of the United States of America at the direction of Barry Moss, CEO of Merit Health, Dr. William C. Lineaweaver, M.D., and Larry M. Nixon, Jr., on the Anesthesia contract.

66. The unlawful actions of the Defendant complained of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff.

66. Plaintiff has been harmed as a result of this national origin and race discrimination, and the Defendant are liable to Plaintiff for the same.

67. The acts of the Defendants constitute a willful intentional violation of 42 U.S.C. §§ 1981 and entitle Plaintiff to recovery of damages, both compensatory and punitive in nature.

### COUNT II:  TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP – AGAINST DEFENDANT WILLIAM C. LINEAWEAVER, M.D.

68. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 67 above as if fully incorporated herein.

69. Plaintiff was Member of Perioperative Services of Mississippi, LLC, which has a written contractual Call Coverage agreement with Jackson HMA, LLC d/b/a Merit Health Central for Anesthesia Services.  As such, Plaintiff was a third-party beneficiary of that contracts.

70. Plaintiff's LLC was also a party to a separate agreement with Jackson HMA for Adult and Pediatric ICU Coverage or Pediatric ICU coverage.  Plaintiff was a third-party beneficiary to that contract.

71.     Plaintiff had two contracts with Jackson HMA, one was for Adult and Pediatric ICU Coverage or Pediatric ICU coverage and the other was for Anesthesia Services.  Plaintiff was a third-party beneficiary to each of those contracts.

72.     By virtue of these contracts, Plaintiff served as the Critical Care Medical Director for Merit Health Central up until April 1, 2019, when he was abruptly removed because of the actions of Defendant William C. Lineaweaver, Individually, and Larry M. Nixon, Jr., M.D., individually.  Plaintiff was both a direct beneficiary and a third-party beneficiary under this contract.

73.     Defendant was aware of this contractual agreement by virtue of the fact that Defendant Lineaweaver wanted Plaintiff removed and replaced and pressured Dr. Nixon to do so.

74.     Defendant Lineaweaver's action were deceitful and malicious in that he deceived Plaintiff into thinking that he approved of Plaintiff's planned three-day absence, then created unnecessary drama and confusion while Plaintiff was away traveling to Pittsburgh to be with family for the Thanksgiving Holiday and ultimately demanding that Plaintiff be removed from his position with Jackson HMA.

75.     Defendant Lineaweaver was also aware that Plaintiff had a business relationship with Jackson HMA, LLC through his partnership with Perioperative Services of Mississippi, LLC.

76.     Defendant Lineaweaver's intentional actions have tortiously interfered with Plaintiff's business relationship with Jackson HMA, LLC.

77.     Defendant Lineaweaver was aware that Plaintiff had a business relationship with Dr. Nixon and Perioperative Services of Mississippi, LLC.

78. Defendant Lineaweaver intentional actions have tortiously interfered with Plaintiff's business relationship with Dr. Nixon and Perioperative Services of Mississippi, LLC.

79. Defendant intentionally caused a breach and termination of the contractual relationship and/or the expectancy thereof.

80. Plaintiff has suffered damages and will continue to suffer significant monetary damages as well as damage to his professional reputations as a result of Defendants' actions.

81. As such, Plaintiff is seeking an award of compensatory damages in an amount to be determined by the jury to fully compensate him for Defendants' actions in tortiously interfering with his business and/or contractual relationship with both Defendant Jackson HMA and Perioperative Services of Mississippi, LLC.

82. In addition, Defendant's actions were done maliciously with the intent to cause Plaintiff injury. As such, Plaintiff is entitled to an award of punitive damages against each of the Defendants in amount to be determined by the jury.

### COUNT III:  BREACH OF CONTRACT – DEFENDANT JACKSON HMA

83. Plaintiff re-alleges and incorporates all averments set forth in paragraphs1 through 82 above as if fully incorporated herein.

84. There is no dispute that Plaintiff was Member of Perioperative Services of Mississippi, LLC, which has a written contractual Call Coverage agreement with Jackson HMA, LLC d/b/a Merit Health Central for Anesthesia Services.  As such, Plaintiff was a third-party beneficiary of that contract.

85.     Plaintiff's LLC was also a party to a separate agreement with Jackson HMA for Adult and Pediatric ICU Coverage or Pediatric ICU coverage.  As such, Plaintiff was a third-party beneficiary of that contract.

86.     So, Plaintiff was a third-party beneficiary of the two call coverage contracts that Plaintiff's LLC had with Jackson HMA.

87.     By virtue of these contracts, Plaintiff also served as the Critical Care Medical Director for Merit Health Central up until April 1, 2019, when he was abruptly removed by Defendant Jackson HMA's CEO Barry Moss. As such, Plaintiff was both a direct and a third-party beneficiary.

88.     By its actions, Defendant Jackson HMA breached the terms and provisions of these contracts to which Plaintiff was a third-party beneficiary.

89.     Plaintiff has suffered damages and will continue to suffer significant monetary damages as well as damage to his professional reputations as a result of this Defendant's actions.

90.     At a minimum, Plaintiff has suffered the following damages as a direct result of Jackson HMA's actions:

1- ICU contract with Perioperative Services of MS, LLC provides for 30 days written notice = **$30,000**

    (Dr. Badr is a third-party beneficiary to the contract and should have received at least 30 days written notice prior to his unilateral removal by Jackson HMA, LLC's CEO Barry Moss);

2- Anesthesia contract with Perioperative Services of MS, LLC provides for 180 days written notice = **$35,000 per month x 6 = $210,000**

>   (Dr. Badr is a third-party beneficiary to the contract and should have received at least 180 days written notice prior to his unilateral removal by Jackson HMA, LLC's CEO Barry Moss); and
>
>   3- Compensatory Damages for the amount of suffering and badgering Dr. Badr was forced to endure from Jackson HMA's CEO Barry Moss since Dr. Badr was unilaterally removed from providing services under both the ICU and Anesthesia contracts = **$1,000,000 or amount deemed appropriate by jury**
>
>   (Additionally, Dr. Badr has suffered a significant loss of income as a result of the CEO's actions after his forced removal which amounts to a 55% reduction of his income since he was forced to leave up till now.  Documentation of that loss will be produced upon request.)

91. As such, Plaintiff is seeking an award of compensatory damages in an amount to be determined by the jury to fully compensate him for Defendant's actions.

92. In addition, Defendant's actions were done maliciously with the intent to cause Plaintiff injury. As such, Plaintiff is entitled to an award of punitive damages against this Defendant in amount to be determined by the jury

## **PRAYER FOR RELIEF**

**WHEREFORE PREMISES CONSIDERED,** Plaintiff respectfully prays that upon hearing of this matter by a jury, the Plaintiff be granted the following relief in an amount to be determined by the jury:

1. Back wages;
2. Reinstatement or future wages in lieu of reinstatement;
3. Lost Benefits;
4. A tax gross-up and all make-whole relief;
5. Compensatory damages;
6. Punitive damages;
7. Attorney's fees;
8. Pre-judgment and post-judgment interest;
9. Costs and expenses; and
10. Such further relief as is deemed just and proper.

THIS the 10th day of November 2021.

                                                Respectfully submitted,

                                                Ahmed Badr, M.D., Plaintiff

                                   By:    <u>/s Nick Norris</u>
                                                Louis H. Watson, Jr.  (MB# 9053)
                                                Nick Norris (MB# 101574)
                                                Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
4209 Lakeland Drive #365
Flowood, MS 39232
Telephone: (601) 968-0000
Facsimile: (601) 968-0010
Email: <u>louis@watsonnorris.com</u>
       <u>nick@watsonnorris.com</u>

## **CERTIFICATE OF SERVICE**

I, Nick Norris, attorney for Plaintiff do hereby certify that I have this day filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing or mailed, via United States Mail, postage prepaid, on all counsel of record.

THIS, the 10th day of October 2021.

/s/ Nick Norris
NICK NORRIS